IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CR-00172-F-1
No. 5:13-CV-00159-F

| | | |
|---|---|---|
| BARTOLO GONZALEZ, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

This matter is before the court on Bartolo Gonzalez's Motion to Vacate, Set Aside, or

Correct Sentence pursuant to 28 U.S.C. § 2255 [DE-80]. Also before the court are Gonzalez's

Ex Parte Petition for Writ of Subpoena Duces Tecum [DE-81] and Motion to Supplement and

Amend [DE-91] and the Government's Motion to Dismiss or, in the alternative, for Summary

Judgment [DE-88]. The issues have been fully briefed, and the matter is now ripe for ruling.

For the reasons more fully stated below, Gonzalez is not entitled to relief on his § 2255 motion,

and Gonzalez's § 2255 motion is DENIED. Further, the Government's Motion to Dismiss or, in

the alternative, for Summary Judgment is ALLOWED in part and DENIED in part, Gonzalez's

Ex Parte Petition for Writ of Subpoena Duces Tecum is DENIED as moot, and Gonzalez's

Motion to Supplement and Amend is DENIED.

## I. Factual and Procedural Background

On June 2, 2010, Gonzalez was named in a three-count indictment. *See* Indictment [DE-

1]. In Count One, Gonzalez was charged with conspiracy to distribute and possess with the

intent to distribute 5 kilograms or more of cocaine and 100 kilograms or more of marijuana, in

violation of 21 U.S.C. § 846. Count Two charged Gonzalez with a continuing criminal

enterprise, in violation of 21 U.S.C. § 848. In Count Three, Gonzalez was charged with

distribution of 5 kilograms or more of cocaine and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

At Gonzalez's arraignment, on May 9, 2011, he pled guilty to Count One, pursuant to a written plea agreement [DE-50]. The plea agreement provided that Counts Two and Three would be dismissed at sentencing. [DE-50] at 5.

On November 9, 2011, the court held Gonzalez's sentencing hearing and sentenced Gonzalez to 292 months' imprisonment. *See* Judgment [DE-61]. On February 8, 2012, Gonzalez filed a letter with this court, which stated

> I asked my attorney to appeal my case. I found that no appeal has been done. I want to appeal my conviction. I want a new appointed attorney. I would appreciate your assistance.

[DE-63] at 1. This court construed the letter as a motion to file an appeal out of time and denied the motion. [DE-66] at 1-2.

Before the Fourth Circuit Court of Appeals, Gonzalez's attorney filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that no meritorious issues exist for appeal but questioning whether Gonzalez knowingly and intelligently waived his right to appeal and whether the district court effectively informed Gonzalez of his constitutional rights during the Rule 11 hearing. The Government moved to dismiss Gonzalez's appeal as untimely. In its August 13, 2012 Order [DE-73], the Fourth Circuit granted the Government's motion to dismiss. In a footnote, the Fourth Circuit recognized Gonzalez's assertion that he made a timely request to his trial attorney to file a notice of appeal and that his attorney failed to do so. [DE-73] at 3 n.2. The Fourth Circuit noted that the record did not allow for consideration of the claim and that Gonzalez could pursue the issue in a timely motion filed pursuant to 28 U.S.C. § 2255. *Id.*

On March 4, 2013, Gonzalez filed the instant Motion to Vacate, Set Aside, or Correct

2

Sentence pursuant to 28 U.S.C. § 2255 [DE-80]. In his § 2255 motion, Gonzalez argues that he is entitled to relief on the following grounds: (1) his plea agreement is unconstitutional on its face because it required him to waive his right to habeas corpus and his rights under the Freedom of Information Act and Privacy Act; (2) the court erred in determining that he was entitled to a two-level increase pursuant to U.S.S.G. § 2D1.1(b)(1) for possessing a dangerous weapon; (3) his guilty plea was not knowingly and intelligently entered; and (4) he was denied effective assistance of counsel at all stages of the proceedings.

Gonzalez filed an Ex Parte Petition for Writ of Subpoena Duces Tecum [DE-81] on March 4, 2013. In his Petition, Gonzalez requests medical records being held at Piedmont Regional Jail.

On July 8, 2013, Gonzalez filed a Motion to Supplement and Amend [DE-91]. In his Motion to Supplement and Amend, Gonzalez raises two claims of ineffective assistance of counsel.

The court held evidentiary hearings on March 25, 2015 and April 1, 2015 to address Gonzalez's claim that his attorneys failed to file a notice of appeal after being directed to do so and his claim that his guilty plea was not knowingly entered.

## II. Legal Standards

### A. Rule 12(b)(6) Motion to Dismiss

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved which is consistent with the complaint's allegations. *E. Shore Mkts., Inc. v. J.D.*

3

*Assocs. Ltd. P'shp*, 213 F.3d 175, 180 (4th Cir. 2000). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level'" and the plaintiff must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts.*, 213 F.3d at 180.

## B. Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact and it appears that the moving party is entitled to judgment as a matter of law. *United States v. Lee*, 943 F.2d 366, 368 (4th Cir. 1991) (applying the summary judgment standard to a motion to vacate). Any permissible inferences which are drawn from the underlying facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Summary judgment is appropriate when the record taken as a whole could not lead a trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Discussion

## A. Section 2255 Motion

### 1. Gonzalez's first and second claims are barred by the waiver in his plea agreement.

4

Gonzalez's plea agreement contained a waiver of his right to challenge his conviction or sentence under 28 U.S.C. § 2255, except in limited circumstances. Such a waiver is enforceable if the defendant waives this right knowingly and voluntarily. *See United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005) ("[A] criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary."). The determination regarding whether a waiver is knowing and voluntary depends "'upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.'" *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). The truth of sworn statements made during a Rule 11 colloquy is conclusively established, absent extraordinary circumstances. *Lemaster*, 403 F.3d at 221-22.

At Gonzalez's Rule 11 hearing, the prosecutor, at the court's direction, read the terms of Gonzalez's plea agreement with the Government into the record. *See* May 9, 2011 Transcript [DE-71] at 21-28. The record reveals that interpreter Carlos Perez translated the proceedings into Spanish for Gonzalez's benefit. *Id.* at 2. Gonzalez's plea agreement, which he signed and agreed to in open court, contains the following relevant waiver:

> To waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing, and further to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea.

[DE-50] at 1-2. After the prosecutor read the terms of the plea agreement into the record, the

5

court asked Gonzalez whether he understood that he was waiving all rights to contest his conviction or sentence in a post-conviction proceeding, except upon the grounds of ineffective assistance of counsel or prosecutorial misconduct not known to him at the time. *See* May 9, 2011 Transcript [DE-71] at 28. Gonzalez, who was under oath, responded affirmatively. *Id.* As discussed fully below with respect to the third claim of Gonzalez's § 2255 motion, the court finds that Gonzalez's waiver was both knowing and voluntary and his allegations to the contrary are without merit.

The first and second claims in Gonzalez's § 2255 motion do not deal with ineffective assistance of counsel or prosecutorial misconduct not known to him at the time of his guilty plea.[1] Accordingly, pursuant to the waiver in his plea agreement, Gonzalez has waived the right to pursue his first and second claims.

### 2. Gonzalez has failed to state a claim for ineffective assistance of counsel on portions of his fourth claim

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984). The petitioner bears the burden of proof as to both prongs of the *Strickland* standard. *United States v. Luck*, 611 F.3d 183, 186 (4th Cir. 2010). Under the first prong, the petitioner must show that his counsel's representation "fell below an objective standard of reasonableness" as measured by "prevailing

---

[1]In the first claim of his § 2255 motion, Gonzalez argues that his plea agreement is unconstitutional on its face because it required him to waive his right to habeas corpus and his rights under the Freedom of Information Act and Privacy Act. In his second claim, Gonzalez argues that the court erred in determining that he was entitled to a two-level increase pursuant to U.S.S.G. § 2D1.1(b)(1) for possessing a dangerous weapon.

6

professional norms." *Strickland*, 466 U.S. at 688. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. As for the second prong, the petitioner must demonstrate that his counsel's inadequate performance was prejudicial to him. *Id.* at 687. Specifically, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id.* The court will apply the *Strickland* standard to each of Gonzalez's ineffective assistance of counsel claims.

In the fourth claim of his § 2255 motion, Gonzalez alleges that he was denied of effective assistance of counsel at all stages of the proceedings. Motion to Vacate [DE-80] at 11-12. Specifically, Gonzalez contends that his attorney provided ineffective assistance of counsel by failing to object to the evidence used to support the firearm enhancement pursuant to U.S.S.G. § 2D1.1(b)(1). *Id.* Gonzalez also contends that he made attorney Ramos aware of his medical difficulties, but neither of his attorneys moved for a competency hearing. *Id.* Finally, Gonzalez contends that his appellate counsel provided ineffective assistance of counsel by filing an *Anders* brief. *Id.* at 12.

### a. Failed to object to evidence supporting U.S.S.G. § 2D1.1(b)(1)

Gonzalez alleges that his attorney provided ineffective assistance of counsel by failing to object to the evidence used to support the firearm enhancement pursuant to U.S.S.G. § 2D1.1(b)(1). *Id.* at 11-12.

This claim must fail because it is belied by the record. Prior to Gonzalez's sentencing hearing, Gonzalez's attorney made the following relevant objection:

7

The defendant denies possession of firearms in connection with the instant offense. Therefore, the 2-level enhancement pursuant to 2D1.1(b)(1) is not appropriate.

Addendum to PSR [DE-55] ¶ 5. The Probation Officer responded with the following written

response:

> Section 2D1.1, Application Note 3, states, in part, 'The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.' This enhancement does not require that the defendant own the firearm; rather, if the firearm is present, the enhancement is appropriate unless it is clearly improbable that the weapon was connected with the offense. Terrazas reported that after Gonzalez's drug money was seized on February 18, 2007, he went to Gonzalez to explain the situation. At the meeting, Gonzalez and several other coconspirators, working at the direction of Gonzalez, were armed with weapons, including assault rifles. Therefore, it is reasonable to conclude that the firearm was possessed in connection with the drug offense and this enhancement has been appropriately applied.

*Id.*

The record reveals that Gonzalez's attorney pursued the objection at Gonzalez's

November 9, 2011 sentencing hearing as follows:

> Your Honor, the other one had to do with an allegation in the Presentence Report that Mr. Gonzalez was in possession of a firearm at a meeting at which a cooperating defendant, Daniel Terrazas, had been present.
> Apparently, Mr. Terrazas had lost a great deal of money on one of these trips and he was called to meet with the leaders of this organization or their representatives to give some explanation for the loss of that money. And in Mr. Terrazas' statement he claims that Mr. Gonzalez was present and that Mr. Gonzalez was armed at that meeting.
> It's Mr. Gonzalez's position that that is untrue. He was present - -

*See* November 9, 2011 Transcript [DE-72] at 13. After hearing from Special Agent Lynn Gay

with the North Carolina State Bureau of Investigation, the court ultimately concluded that

Gonzalez would be held responsible for the presence of a firearm. *Id.* at 19. Because Gonzalez's

attorney pursued the objection to the application of U.S.S.G. § 2D1.1(b)(1), both prior to

8

sentencing and at Gonzalez's sentencing hearing, this claim must fail.

### b. Failed to move for a competency hearing

Gonzalez alleges that he made attorney Ramos aware of his medical difficulties, which are further discussed later in this order, but neither of his attorneys moved for a competency hearing. Motion to Vacate [DE-80] at 11-12.

This claim must fail under *Strickland* because Gonzalez has failed to allege any prejudice. Specifically, Gonzalez has failed to suggest he suffered prejudice by his attorneys' failure to move for a competency hearing. Consequently, this ineffective assistance of counsel claim must fail.

### c. Appellate counsel filed an *Anders* brief

Gonzalez alleges that his appellate counsel provided ineffective assistance of counsel by filing an *Anders* brief and failing to raise the issues Gonzalez raises in his § 2255 motion. Motion to Vacate [DE-80] at 12. Gonzalez further alleges that his appellate counsel's failure to raise the issues left him to "fend for himself." *Id.*

At the outset, the court notes that appellate counsel's *Anders* brief included the issues of whether Gonzalez knowingly and intelligently waived his right to appeal and whether this court effectively informed Gonzalez of his constitutional rights during his Rule 11 hearing. [DE-73] at 1-2. This court further notes that an appellate attorney need not address every conceivable issue. Rather, the court "must accord appellate counsel the 'presumption that he decided which issues were most likely to afford relief on appeal.'" *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)). The court concludes that Gonzalez has failed to show that his appellate counsel's filing of an *Anders* brief was deficient

9

performance that prejudiced him. Accordingly, this ineffective assistance of counsel claim must fail under *Strickland*.

**3. Gonzalez is not entitled to relief on his third claim and the remainder of his fourth claim.**

In the third claim of his § 2255 motion, Gonzalez alleges that his guilty plea was not knowingly and intelligently entered. Motion to Vacate [DE-80] at 9. Gonzalez alleges in the remaining portion of his fourth claim that his attorneys failed to file a notice of appeal as he requested. *Id.* at 12. The court concludes that Gonzalez has presented genuine issues of material with respect to these issues. For this reason, the Government's Motion to Dismiss or, in the alternative, for Summary Judgment, as it relates to Gonzalez's third claim and the remaining portion of his fourth claim, is DENIED. Nevertheless, for the reasons set forth below, the court determines that Gonzalez is not entitled to relief on either of these claims.

### a. Evidentiary Hearings

The court held evidentiary hearings on the third and fourth claims on March 25, 2015 and April 1, 2015, with Gonzalez present and represented by Assistant Federal Public Defender Eric Brignac. Assistant United States Attorney Seth M. Wood represented the Government. The court heard testimony from Carla Gonzalez, Gonzalez, Robert Ramos, and medical expert Dr. Edward Gordon.

### i. Carla Gonzalez's Testimony

At the March 25, 2015 evidentiary hearing, Carla Gonzalez, Gonzalez's daughter, testified. *See* March 25, 2015 Transcript [DE-119] at 9-20. Carla stated that Ramos quoted the family around $15,000 to represent her father. *Id* at 10. Carla testified that she and other family

10

members paid for Gonzalez's representation. *Id.* Carla explained that the family had to take out loans in order to pay Ramos for his services. *Id.* According to Carla, Ramos did not inform the family until later that he was not licensed to practice in North Carolina and would need additional funds to secure local counsel. *Id* at 10-11. When Ramos requested the additional funds for local counsel, the family had no more money to pay him. *Id.*

Carla stated that the meetings with Ramos included her, her brother and her mother. *See* March 25, 2015 Transcript [DE-119] at 11. Carla explained that she is bilingual, but the meetings had to be conducted in Spanish because her mother doesn't speak any English at all. *Id.* at 12. Carla stated that Ramos was not completely fluent in Spanish, and at times, he had to use English words to communicate certain concepts, including some legal terms. *Id.*

Carla testified that Gonzalez called after his sentencing hearing and told them he was sentenced to twenty-four years in prison. *Id.* at 13 Carla explained that everyone was distressed, and her father was desperate. *Id.* Carla testified that her father told her to ask Ramos about filing an appeal. *Id.*

Carla testified that a few days after Gonzalez's sentencing hearing, she, her brother and her mother met with Ramos once again, and asked him to file a notice of appeal on behalf of Gonzalez. *See* March 25, 2015 Transcript [DE-119] at 13. Carla testified that Ramos said there was nothing else he could do in the case and that his job had ended that day. *Id.* According to Carla, Ramos was also angry because Gonzalez did not cooperate. *Id.* at 14-15. Carla stated that Ramos would not be telling the truth if he stated that he was not instructed to file an appeal. *Id.* at 20.

Carla explained that Gonzalez was declared terminally ill in the year 2014. *Id.* at 15.

11

Carla also explained that Gonzalez has been put in Hospice within the prison because he is not expected to live very long. *See* March 25, 2015 Transcript [DE-119] at 15. According to Carla, they are currently working on a compassionate release plan for Gonzalez. *Id.* at 19

### ii. Bartolo Gonzalez's Testimony

Bartolo Gonzalez, assisted by interpreters, testified at the March 25, 2015 evidentiary hearing. *See* March 25, 2015 Transcript [DE-119] at 47-66. Gonzalez stated that he is fifty-seven years old and has a middle school education, which he received in Mexico. *Id.* at 47-48.

Gonzalez testified that Ramos met with him three times to talk prior to his signing of the plea agreement. *Id.* at 49. According to Gonzalez, Ramos only handed him one sheet of paper to sign. *Id.* at 48. Gonzalez testified that prior to signing the piece of paper Ramos asked him to sign, Ramos told him he was facing ten years to life in prison. *Id.* at 52. Gonzalez stated that he did not know he was waiving his right to appeal until some point after he had filed his direct appeal. *Id.* at 49. Gonzalez further stated that he would not have signed the plea agreement if he had been aware that it included a provision waiving his appellate rights. *See* March 25, 2015 Transcript [DE-119] at 53.

Gonzalez testified that on the day of his Rule 11 hearing, May 9, 2011, he had a five-hour transfer to get to court, and it made him not feel well and caused him to have a hard time remembering things. *Id.* Gonzalez stated that he told Ramos how he was feeling, and Ramos told him not to worry about it. *Id.* Further, Gonzalez stated that Ramos told him that he could sit if he didn't feel like standing, and if he didn't know what he was supposed to answer, Ramos would give him a signal or tell him how he should answer. *Id.* Gonzalez explained that Ramos told him not to tell the judge about not feeling well because it could cause an interruption or

12

make the judge upset. *Id.*

Gonzalez testified that he didn't understand a lot of the court's questions at his Rule 11 hearing. *Id.* at 54. Gonzalez admitted that he did not ask the court any questions about his case during his Rule 11 hearing. *See* March 25, 2015 Transcript [DE-119] at 62. Gonzalez also admitted that an interpreter was present and assisted him by translating at his Rule 11 hearing. *Id.* at 60. Gonzalez explained that he only understood "little parts" of his plea agreement, which was read into the record in open court. *Id.* at 54. Gonzalez stated that he didn't understand that he was waiving his right to an appeal. *Id.* at 54-55. Gonzalez further stated that he would not have pleaded guilty if he had understood that he was waiving his right to an appeal. *Id.* at 55.

Gonzalez testified that after his sentencing hearing, he did not meet with Peregoy or Ramos. *Id.* at 55-56. According to Gonzalez, he called his daughter, Carla. *See* March 25, 2015 Transcript [DE-119] at 56. Gonzalez stated that he asked Carla to go and see Ramos and ask him to prepare the paperwork for an appeal. *Id.* Gonzalez testified that if he had met with Ramos or Peregoy after his sentencing hearing, he would have asked them to file an appeal on his behalf. *Id.*

Gonzalez described himself as in "critical" condition at the time of his Rule 11 and sentencing hearings. *Id.* Gonzalez stated that he was "gravely ill" when he was transferred from Brunswick to Piedmont Jail. *Id.* at 56-57. Gonzalez also stated that he told Ramos that he was so sick that he was having trouble remembering his own name and people he had just met. *Id.* at 57-58. According to Gonzalez, Ramos did not attempt to have his competency evaluated. *See* March 25, 2015 Transcript [DE-119] at 58.

Gonzalez explained that presently he is in Hospice because he is at the terminal stage. *Id.*

13

at 56. Gonzalez further explained that he is in a clinic in Fort Worth that is within the prison. *Id.*

### iii. Attorney Robert Ramos' Testimony

Attorney Robert Ramos also testified before the court at the March 25, 2015 evidentiary hearing. *See* March 25, 2015 Transcript [DE-119] at 21-46. Ramos testified that he is a lawyer based in El Paso, Texas. *Id.* at 21. Ramos further testified that he is licensed by the Texas Bar and has been licensed to practice law for a little over forty years. *Id.* at 21-22.

Ramos explained that he began his career with the Federal Public Defender's Office in the 1970's, and then he went into private practice about 1986. *Id.* at 22. Ramos stated that he helped establish the Federal Public Defender's Office in El Paso, Texas. *Id.* Ramos also stated that his practice has been limited to criminal defense for over twenty years. *Id.* Ramos testified that he has represented thousands of clients over the course of his career, and his practice has been in both state and federal court. *See* March 25, 2015 Transcript [DE-119] 22-23.

Ramos explained that he served as lead retained counsel for Bartolo Gonzalez in this court. *Id.* at 23. Ramos stated that he had Mr. Peregoy as local counsel because it was a court requirement, but he was not really relying on Mr. Peregoy to give him the ins and outs because he had a national practice. *Id.* at 43-44.

According to Ramos, he is fluent in the Spanish and communicated with Gonzalez in Spanish. *Id.* at 23. Ramos stated that it was his impression that Gonzalez understood what he was saying. *Id.* Further, Ramos stated that he and Gonzalez discussed whether Gonzalez should plead guilty pursuant to a plea agreement. *Id.* at 23-24. Ramos testified that they discussed the entire plea agreement several times. *See* March 25, 2015 Transcript [DE-119] at 25. Ramos also testified that he went over the appellate waiver contained in the plea agreement with Gonzalez.

14

*Id.* Ramos stated that it was his impression that Gonzalez understood the plea agreement. *Id.*

Ramos testified that just prior to the Rule 11 hearing, he met with Gonzalez. *Id.* at 26. Ramos further testified that he was present for and recalls Gonzalez's Rule 11 proceeding. *Id.* at 25. Ramos stated that prior to the Rule 11 proceedings, he was aware that Gonzalez had health issues. *Id.* at 26. Further, Ramos stated that Gonzalez "probably did" tell him that he was feeling ill. *See* March 25, 2015 Transcript [DE-119] at 39. Ramos testified that he responded by asking Gonzalez if he was too ill to move forward. *Id.* at 42. Ramos further testified that to the best of his recollection, Gonzalez generally responded by saying he was all right and would like to go forward. *Id.*

According to Ramos, there was nothing that occurred during Gonzalez's Rule 11 proceedings that caused him to question Gonzalez's understanding of the proceedings. *Id.* at 27. Ramos stated that he did not see or hear anything during the Rule 11 proceedings that caused him to question whether Gonzalez understood what the court was asking of him. *Id.* Ramos also stated that Gonzalez was eager to make sure that the proceedings went along without any problems. *Id.* at 28. Ramos testified that he may have gestured with his eyes or hands to let Gonzalez know that he was doing fine, but Ramos did not tell Gonzalez how to answer the court's questions. *See* March 25, 2015 Transcript [DE-119] at 28.

Ramos stated that following the Rule 11 proceedings, Gonzalez never expressed to Ramos that he did not understand what had taken place during the Rule 11 proceedings. *Id.* at 28-29. According to Ramos, Gonzalez never asked him to withdraw the guilty plea that he had entered. *Id.* at 29. Ramos testified that he did not believe that he had a chance to talk with Gonzalez immediately following sentencing. *Id.* Ramos stated that he could not recall if he

15

talked to Gonzalez on the phone after Gonzalez's sentencing hearing. *Id.*

Ramos remembered that Gonzalez's family came to meet with him after the sentencing hearing. *Id.* Ramos explained that either Gonzalez's daughter and/or son came to his office to talk about how things had gone and to get an explanation as to why Gonzalez got so much time. *See* March 25, 2015 Transcript [DE-119] at 29. Ramos testified that the subject of an appeal came up, and he explained to them that the plea required Gonzalez to waive any appellate rights. *Id.* at 29-30. Ramos testified that they seemed a little disappointed, but they never said that in spite of the plea agreement, Gonzalez wanted to file an appeal. *Id.* at 30. Ramos stated that if Gonzalez had expressed interest in an appeal he would have discussed the potential success or likelihood of success, reminded him that he waived his appellate rights, and told him that he did not see any meritorious grounds for an appeal. *Id.* at 32. Ramos testified that Gonzalez received a sentence within the guideline range, so the appellate waiver applied. *Id.* at 30. Ramos testified that neither Gonzalez nor his family specifically instructed him to file a notice of appeal. *Id.* Ramos testified that if he had been instructed to file a notice of appeal by Gonzalez or his family, he would have done it. *See* March 25, 2015 Transcript [DE-119] at 31.

### iv. Dr. Edward Gordon's Testimony

At the April 1, 2015 evidentiary hearing, the Government called medical expert Dr. Edward Gordon. *See* April 1, 2015 Transcript [DE-118] at 2. Dr. Gordon explained that about five years ago he provided medical services to inmates at Piedmont Regional Jail in Farmville, Virginia for about nine years. *Id.* at 5, 6. Dr. Gordon stated that he worked at Piedmont Regional Jail as both the physician and medical director. *Id.* at 5. In his work at the jail, Dr. Gordon took care of the inmates and directed the care of the medical staff. *Id.* Dr. Gordon

16

testified that he presently serves as the medical director and physician at The Woodland, a skilled nursing facility, nursing home and assisted living located in Farmville, Virginia. *Id.* at 3. Dr. Gordon also testified that he currently serves as a consultant medical examiner. *Id.* at 5. Dr. Gordon was qualified by the court as an expert in the medical treatment of inmates. *See* April 1, 2015 Transcript [DE-118] at 7.

Dr. Gordon stated that he provided treatment for Gonzalez while he was an inmate at Piedmont Regional Jail. *Id.* Dr. Gordon testified that prior to coming to court to testify, he reviewed Gonzalez's medical records from Piedmont Regional Jail. *Id.* Dr. Gordon testified that he reviewed records from both before and after Gonzalez's Rule 11 hearing, which was held on May 9, 2011. *Id.* at 14-15.

While testifying, Dr. Gordon referred to Defendant's Exhibit 3, which was Gonzalez's Medication Administration Record from May of 2011. *Id.* at 8. According to the Medication Administration Record, the following medications were on Gonzalez's regimen in May 2011: Zofran, Simvastatin, Digoxin, Metoprolol, Warfarin, Ensure Plus, and Acetaminophen. *See* March 25, 2015 Evid. Hrg. Def's Exhibit 3 at 1-2. Dr. Gordon explained that Zofran is a medication for nausea, and the medication is not associated with mental confusion or competency. *See* April 1, 2015 Transcript [DE-118] at 9. Dr. Gordon testified that Simvastatin is for someone who has high cholesterol or could be in danger of having a high cholesterol as a prevention of heart disease. *Id.* Dr. Gordon was not aware that Simvastatin was associated with mental confusion or lack of competency. *Id.* at 9-10. Dr. Gordon stated that Digoxin is a medication that is sometimes used for things like atrial fibrillation or to make the heart beat stronger if there is a weak heart. *Id.* at 10. Dr. Gordon suggested there are circumstances where

17

Digoxin is associated with mental confusion, such as if the level of Digoxin was in the toxic range for a long period of time. *Id.* Dr. Gordon noted that there would be a long period of agitation and combativeness and one would see central nervous system signs that would be long-lasting. *Id.* Dr. Gordon noted that he did not see any record of Gonzalez exhibiting the kind of confusion or agitation that could be associated with Digoxin. *See* April 1, 2015 Transcript [DE-118] at 11. Dr. Gordon stated that Metoprolol is a blood pressure medication that makes the heart beat harder and helps the vascular system so that it brings blood pressure down, but it is not associated with confusion. *Id.* Dr. Gordon explained that Warfarin is a blood thinner used for people who have atrial fibrillation or may need it in relationship to valve replacements. *Id.* Also, Dr. Gordon explained that Warfarin is sometimes used to prevent blood clots after surgery, especially in the case of hip and knee surgery. *Id.* Gordon testified that Warfarin is generally not associated with confusion, but it can be associated with confusion if it causes a stroke. *Id.* at 12. Dr. Gordon testified that his review of Gonzalez's medical records did not reveal any evidence of a stroke. *See* April 1, 2015 Transcript [DE-118] at 12-13. Dr. Gordon stated that Ensure Plus is a supplement drink, especially for protein, and to his knowledge it is not associated with any sort of confusion. *Id.* at 12. Dr. Gordon testified that Acetaminophen, also known as Tylenol, was listed on Gonzalez's Medication Administration Record, but Dr. Gordon noted that Gonzalez never needed or requested any Acetaminophen. *Id.* at 13. Dr. Gordon stated that Acetaminophen is not associated with mental confusion. *Id.* at 14.

Dr. Gordon testified that the medications that Gonzalez was taking in May 2011, taken in combination, do not cause confusion. *Id.* Dr. Gordon further testified that a person receiving the medications Gonzalez was receiving in the amounts stated in Gonzalez's Medication

18

Administration Record he would regard to be competent. *See* April 1, 2015 Transcript [DE-118] at 17.

Dr. Gordon stated that in the case of someone who is very ill, the travel from Farmville, Virginia to Wilmington, North Carolina could have exacerbated Gonzalez's illness or physical discomfort. *Id.* at 16. Dr. Gordon also stated that if someone is in a high-anxiety situation that it could exacerbate physical or mental symptoms. *Id.* at 17.

When asked to give his general impressions about Gonzalez's health around May 9, 2011, the date of Gonzalez's Rule 11 hearing, Dr. Gordon noted that Gonzalez was a very ill man and went through quite a few life-threatening procedures. *Id.* at 15. Even so, Dr. Gordon stated that he did not see anything in Gonzalez's medical records that reflected confusion or lack of understanding by Gonzalez. *Id.* Dr. Gordon stated that Gonzalez's records reflected no mental instability. *Id.* at 17.

Dr. Gordon conceded that he did not personally see Gonzalez on the morning of May 9, 2011, before Gonzalez left the jail and he did not personally observe Gonzalez that evening when Gonzalez returned. *See* April 1, 2015 Transcript [DE-118] at 16. Dr. Gordon admitted he had no knowledge based on personal observation of Gonzalez's physical or mental state on May 9, 2011. *Id.*

### b. Gonzalez's Third Claim

In his third claim, Gonzalez alleges that his guilty plea was not knowingly and intelligently entered. Motion to Vacate [DE-80] at 9. Gonzalez contends that his plea was not knowingly and intelligently entered because he had a very limited understanding of the English language, he was not educated in the law, and he was heavily medicated due to some serious

19

medical complications he was experiencing. *Id.*

### i. Applicable Law

"[F]or a guilty plea to be valid, the Constitution imposes 'the minimum requirement that [the] plea be the voluntary expression of [the defendant's] own choice.'" *United States v. Moussaoui*, 591 F.3d 263, 278 (4th Cir. 2010) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). A guilty plea must reflect a "voluntary and intelligent choice" which is made among the courses of action that are open to the defendant. *Id.* When a court evaluates the constitutional validity of a guilty plea, it must look at the totality of the circumstances surrounding the guilty plea and give the defendant's solemn declaration of guilt a presumption of truthfulness. *Id.*

### ii. Discussion

Gonzalez's allegation that his guilty plea was not knowingly and intelligently entered at his May 9, 2011 Rule 11 hearing because he had a limited understanding of the English language must fail. The record reveals that Gonzalez was assisted throughout his Rule 11 hearing by Spanish-speaking interpreter Carlos Perez. *See* May 9, 2011 Transcript [DE-71] at 2.

Gonzalez's allegation that his guilty plea was not knowingly and intelligently entered during his Rule 11 hearing because he was not educated in the law also must fail. The record reveals that Gonzalez's retained counsel, Robert Ramos and William T. Peregoy, were present to assist him throughout his Rule 11 hearing. Moreover, prior to Gonzalez's Rule 11 hearing, Ramos testified that he met with and discussed the entire plea agreement with Gonzalez several times. *See* March 25, 2015 Transcript [DE-119] at 25. Ramos also testified that it was his impression that Gonzalez understood the plea agreement. *Id.* Ramos stated that following the

20

Rule 11 proceedings, Gonzalez never expressed that he did not understand what had taken place during the Rule 11 proceedings. *Id.* at 28-29. Additionally, Gonzalez never asked Ramos to withdraw the guilty plea that he had entered. *Id.* at 29.

The evidence presented before the court at the March 25, 2015 and April 1, 2015 evidentiary hearings does not support Gonzalez's allegation that he did not understand what was taking place at his Rule 11 hearing. As noted, the court allowed medical expert Dr. Gordon to testify about Gonzalez's medications on the day of the Rule 11 hearing, May 9, 2011, and their potential impact on his state of mind. Medical expert Dr. Gordon opined that the medications that Gonzalez was taking in May 2011, even when viewed in combination, do not cause confusion or lack of competency. *See* April 1, 2015 Transcript [DE-118] at 14. Dr. Gordon stated that he would regard a person receiving the medications Gonzalez was taking, in the amounts stated in Gonzalez's Medication Administration Record, as being competent. *Id.* at 17. Dr. Gordon testified that he did not see anything in Gonzalez's medical records that reflected confusion or lack of understanding. *Id.* at 15. Dr. Gordon opined that Gonzalez's medical records reflected no mental instability. *Id.* at 17.

Gonzalez's claims that he did not know he was waiving his right to appeal until some point after he had filed his direct appeal and his claim that he would not have signed the plea agreement if he had been aware that it included a provision waiving his appellate rights are belied by the record from Gonzalez's Rule 11 hearing. At Gonzalez's Rule 11 hearing, the prosecutor, at the direction of the court, read the terms of the plea agreement into the record. *See* May 9, 2011 Transcript [DE-71] at 21-28. The prosecutor, in pertinent part, read as follows:

The defendant agrees to . . . waive all rights to appeal whatever sentence is imposed

21

including any issues that relate to the establishment of the advisory guideline range
reserving only the right to appeal from a sentence in excess of the applicable advisory
guideline range that is established at sentencing and further to waive all rights to
contest the conviction or sentence in any post-conviction proceeding excepting an
appeal or motion based upon grounds of ineffective assistance of counsel or
prosecutorial misconduct not known to the defendant at the time of the defendant's
guilty plea.

*Id.* at 22. At the conclusion of the reading of the plea agreement, Gonzalez, who was under oath,

was asked if those were the terms of his plea agreement with the Government. *Id.* at 28. Gonzalez

responded in the affirmative. *Id.* Later, the court went over the appellate waiver again with

Gonzalez as follows:

Do you understand you reserve only the right to appeal from an upward departure
from the advisory guideline range established at sentencing and that you otherwise
waive all rights to appeal whatever sentence is imposed and you waive all rights to
contest your conviction or sentence in a post-conviction proceeding except upon the
grounds of ineffective assistance of counsel or prosecutorial misconduct not known
to you at this time?

*Id.* Gonzalez, who was still under oath, respond in the affirmative. *Id.*

The court concludes that Gonzalez is bound by his sworn statements during his Rule 11

hearing, and his current allegations to the contrary must be rejected. *See Fields v. Attorney Gen.*

*of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the

contrary, a defendant is bound by the representations he makes under oath during a plea

colloquy."); *see also United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) ("[I]n the

absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly

contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy

are always 'palpably incredible' and 'patently frivolous or false.'" (citations omitted)). Gonzalez

has not shown that extraordinary circumstances exist such that the court may disregard the sworn

22

statements from his Rule 11 hearing.

For the foregoing reasons, Gonzalez is not entitled to relief on the third claim in his § 2255 motion.

### c. Gonzalez's Fourth Claim

In his § 2255 motion, Gonzalez alleges in his fourth claim that his attorneys failed to file a notice of appeal as he requested. Motion to Vacate [DE-80] at 12. Gonzalez further alleges that because his attorneys did not file a notice of appeal, he was forced to file an untimely notice of appeal. *Id.* Following the March 25, 2015 and April 1, 2015 evidentiary hearings, Gonzalez's appointed counsel defined the fourth claim as follows: Ramos provided ineffective assistance of counsel by not filing a notice of appeal when Gonzalez requested it, and Ramos and Peregoy provided ineffective assistance by declining to counsel Gonzalez regarding his appellate rights when Ramos had been put on actual notice that Gonzalez was interesting in filing a notice of appeal. Petitioner's Supp. Brief [DE-117] at 1.

### i. Applicable Law

It is well established that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). "[A]n attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests." *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007).

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court discussed an attorney's obligation to consult with his client about an appeal. The Court noted as follows:

23

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an
> appeal when there is reason to think either (1) that a rational defendant would want
> to appeal (for example because there are nonfrivolous grounds for appeal), or (2) that
> this particular defendant reasonably demonstrated to counsel that he was interested
> in appealing.

*Flores-Ortega*, 528 U.S. at 480. In evaluating whether an attorney had a constitutional duty to

consult,

> the Court [in *Flores-Ortega*] indicated that several factors were relevant, including
> whether the conviction followed a trial or guilty plea. In cases involving guilty pleas,
> the Court instructed lower courts to consider whether the defendant received the
> sentence bargained for as part of the plea and whether the plea expressly reserved or
> waived appeal rights.

*Poindexter*, 492 F.3d at 268 (internal quotation marks and citation omitted).

### ii. Discussion

The court will first address Gonzalez's claim that Ramos provided ineffective assistance

of counsel by not filing a notice of appeal when Gonzalez requested it. The court's

determination of Gonzalez's entitlement to relief under § 2255 depends on a credibility

determination. The court having heard the testimony from Gonzalez, Carla Gonzalez and Robert

Ramos at the March 25, 2015 evidentiary hearing and having had the opportunity to observe all

three individuals, concludes that Ramos provided the most credible account. As noted above,

Ramos testified that neither Gonzalez nor his family specifically instructed him to file a notice of

appeal. *See* March 25, 2015 Transcript [DE-119] at 30-31. Ramos testified that if he had been

instructed to file a notice of appeal by Gonzalez or his family, he would have done it. *Id.* at 31.

The court does not believe that Ramos received a direct instruction from Gonzalez or his family

to file a notice of appeal. Accordingly, Gonzalez has failed to establish an ineffective assistance

of counsel claim against Ramos for failure to file a notice of appeal.

24

Now, the court will address Gonzalez's claim that Ramos and Peregoy provided ineffective assistance by declining to counsel him regarding his appellate rights when Ramos had been put on actual notice that he was interesting in filing a notice of appeal. The relevant testimony for this claim is as follows: Gonzalez testified that he called his daughter, Carla, after his sentencing hearing and asked her to go see Ramos and ask him to prepare the paperwork for an appeal. *See* March 25, 2015 Transcript [DE-119] at 56. Carla testified that she, her brother and her mother went and met with Ramos and asked him to file a notice of appeal. *Id. at* 13. Carla further testified that Ramos said there was nothing else he could do in the case and that his job had ended that day. *Id.* Ramos testified that Gonzalez's family came to talk about how things had gone and to get an explanation as to why Gonzalez got so much time at sentencing. *Id.* at 29. Ramos also testified that the subject of an appeal came up, and he explained to them that the plea required Gonzalez to waive any appellate rights. *Id.* at 29-30. According to Ramos, the family seemed a little disappointed, but they never said that in spite of the plea agreement, Gonzalez wanted to file an appeal. *Id.* at 30. Ramos testified unequivocally that Gonzalez's family never specifically instructed him to file a notice of appeal. *See* March 25, 2015 Transcript [DE-119] at 30.

The testimony provided by Gonzalez and Carlos is inconsistent with that provided by Ramos. The court's determination of Gonzalez's entitlement to relief under § 2255 as to this claim depends on another credibility determination. The court concludes that Gonzalez and Carla are not credible, and Ramos provided the most credible account. The court believes that Carla's testimony is motivated by the understandable desire to help her sick father who is incarcerated. As for Gonzalez, as noted above, on February 8, 2012, Gonzalez filed a letter with

25

this court, which stated that he asked his attorney to appeal his case. [DE-63] at 1. In contrast, at the court's March 25, 2015 evidentiary hearing, Gonzalez testified that after his sentencing hearing, he did not meet with Peregoy or Ramos. *Id.* at 55-56. Gonzalez testified that if he had met with Ramos or Peregoy after his sentencing hearing, he would have asked them to file an appeal on his behalf. *Id.* at 56. Also, Gonzalez's counsel conceded during the March 25, 2015 evidentiary hearing that Gonzalez did not notify his attorney in writing that he wished to appeal. *See* March 25, 2015 Transcript [DE-119] at 70. Gonzalez's February 8, 2012 letter is inconsistent with his evidentiary hearing testimony and his attorney's concession that he did not consult with Ramos or Peregoy or notify his attorney in writing that he wished to appeal. The court also notes that Gonzalez testified during the March 25, 2015 evidentiary hearing that he didn't understand that he was waiving his right to an appeal. *Id.* at 54-55. As noted, the appellate waiver provision was read into the record in open court at Gonzalez's Rule 11 hearing. *See* May 9, 2011 Transcript [DE-71] at 22. Then, the court followed up by confirming that Gonzalez understood the provision by advising him, once again, that he reserved only the right to appeal from an upward departure from the advisory guideline range and that otherwise he had waived all rights to appeal whatever sentence was imposed. *Id.* at 28.

The court observes that at the conclusion of Gonzalez's November 9, 2011 sentencing hearing, he was advised as follows

> With few exceptions, any notice of appeal must be filed within 14 days of the judgment being entered on the docket in your case.
> If you're unable to pay the costs of an appeal you may apply for leave to apply in forma pauperis. If you so request, the Clerk of Court will prepare and file a notice of appeal on your behalf.
> *If you wish to appeal your conviction or sentence, you're advised to so notify your attorney in writing immediately upon your election to do so.*

26

November 9, 2011 Transcript [DE-72] at 31 (emphasis added). Gonzalez's § 2255 counsel conceded that Gonzalez did not notify his attorney in writing that he wished to appeal. *See* March 25, 2015 Transcript [DE-119] at 70.

For all the reasons addressed, Gonzalez is not entitled to relief on the fourth claim in his § 2255 motion.

## B. Ex Parte Petition for Writ of Subpoena Duces Tecum

In his *pro se* Ex Parte Petition for Writ of Subpoena Duces Tecum, Gonzalez requests medical records being held at Piedmont Regional Jail. Ex Parte Petition [DE-81] at 2. Gonzalez notes that the records he is seeking would establish the medications he was taking pretrial, during his trial, and on the day of his guilty plea. *Id.*

At Gonzalez's March 25, 2015 evidentiary hearing, Gonzalez's appointed counsel admitted Gonzalez's Medication Administration Record from Piedmont Regional Jail as an exhibit. *See* March 25, 2015 Evidentiary Hearing Def's Exhibit 3. Because it appears that Gonzalez's appointed attorney was able to secure the records Gonzalez was seeking in his *pro se* motion, Gonzalez's Ex Parte Petition for Writ of Subpoena Duces Tecum [DE-81] is DENIED as moot.

## C. Motion to Supplement and Amend

In his Motion to Supplement and Amend, Gonzalez raises two ineffective assistance of counsel claims. The amendment of a § 2255 motion is governed by Rule 15 of the Federal Rules of Civil Procedure. *See United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) (noting that although the Rules Governing Section 2255 do not address the procedure for amending motions,

27

courts have typically applied Federal Rule of Civil Procedure 15). The Fourth Circuit has held

that "the standards used by a district court in ruling on a motion to amend or on a motion to

supplement are nearly identical." *Franks v. Ross,* 313 F.3d 184, 198 n.15 (4th. Cir. 2002). "In

either situation, leave should be freely granted, and should be denied only where 'good reason

exists ... , such as prejudice to the defendants.'" *Id.* (quoting *Walker v. United Parcel Serv.,* 240

F.3d 1268, 1278 (10th Cir. 2001) (internal quotation and citation omitted)). Leave to amend

should also be denied when there has been bad faith by the moving party or when the amendment

would be futile. *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999).

### 1. Failed to object to gun enhancement

In his first claim, Gonzalez alleges that his attorney provided ineffective assistance of

counsel by failing to object to the two point gun enhancement he received pursuant to U.S.S.G. §

2D1.1(b)(1). Motion to Supplement [DE-91] at 2.

This claim was also raised in Gonzalez's § 2255 motion. As discussed above, this

this claim must fail because is belied by the record. Gonzalez's attorney objected to the

application of U.S.S.G. § 2D1.1(b)(1), both prior to sentencing and at Gonzalez's sentencing

hearing. Because Gonzalez's attorney objected to the application of U.S.S.G. § 2D1.1(b)(1), this

claim must fail.

### 2. Failed to have a North Carolina license

In his second claim, Gonzalez alleges that his attorney, Robert Ramos, provided

ineffective assistance of counsel by failing to have a license to practice law in North Carolina and

hiring another lawyer, William T. Peregoy, to stand in for him. Motion to Supplement [DE-91]

at 2. Gonzalez contends that he was not consulted about the decision to have Peregoy stand in

for Ramos, and it was not possible that Peregoy was able to become familiar with his case in such a short period of time. *Id.*

A review of the record reveals that attorney Robert Ramos entered a notice of appearance as non-district counsel [DE-13]. This court's Local Rules require that litigants in a criminal action be represented by at least one member of the bar of this court. *See* Local Criminal Rule 57.1(d). Attorney William T. Peregoy entered a notice of appearance [DE-22] as local counsel in the case. Even though Ramos was not a member of the bar of this court, he had local counsel Peregoy in place as local counsel.

Gonzalez's claim that Peregoy did not have sufficient time to get up to speed on his case must also fail. Peregoy entered his notice of appearance on September 27, 2010. As noted, Gonzalez's arraignment was not held until May 9, 2011. Thus, Peregoy had more than seven months between the time he entered the case and the time he had to appear for Gonzalez's arraignment. Moreover, a review of the record reveals that although Peregoy was present at Gonzalez's arraignment and sentencing hearing, the case was handled by Ramos. In fact, the only substantive filing by defense counsel in this case, a Sentencing Memorandum [DE-59], was filed by Ramos, not Peregoy. Because Gonzalez has failed to show deficient performance by Ramos or any resulting prejudice, Gonzalez's second claim must fail under *Strickland*.

As discussed, Gonzalez has failed to state a claim for ineffective assistance of counsel under *Strickland* in the two claims set forth in his Motion to Supplement and Amend. Consequently, Gonzalez's Motion to Supplement and Amend [DE-91] is DENIED on the basis that it would be futile to amend.

## IV. Conclusion

29

For the foregoing reasons, Gonzalez is not entitled to relief on his § 2255 motion [DE-80], and the motion is DENIED. The Government's Motion to Dismiss or, in the alternative, for Summary Judgment [DE-88] is ALLOWED in part and DENIED in part, Gonzalez's Ex Parte Petition for Writ of Subpoena Duces Tecum [DE-81] is DENIED as moot, and Gonzalez's Motion to Supplement and Amend [DE-91] is DENIED. The court concludes that Gonzalez has not made the requisite showing to support a certificate of appealability. Therefore, a certificate of appealability is DENIED.

SO ORDERED.

This the 16 day of September, 2015.

James C. Fox
Senior United States District Judge

30